1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MICHAEL WINDER,

11               Plaintiff,              No. CIV S-04-1944 DFL KJM P

12         vs.

13   R.W. SANDHAM, et al.,

14               Defendants.              FINDINGS & RECOMMENDATIONS

15   _____/

16               Plaintiff is a state prison inmate proceeding pro se with a civil rights action under

17   42 U.S.C. § 1983.  Defendants St. Andre, Cox and Sandham have moved for summary judgment.

18   I.  Summary Judgment Standards Under Rule 56

19               Summary judgment is appropriate when it is demonstrated that there exists "no

20   genuine issue as to any material fact and that the moving party is entitled to a judgment as a

21   matter of law."  Fed. R. Civ. P. 56(c).

22   /////

23   /////

24   /////

25   /////

26   /////

1

1                Under summary judgment practice, the moving party

2                always bears the initial responsibility of informing the district court
of the basis for its motion, and identifying those portions of "the
3                pleadings, depositions, answers to interrogatories, and admissions
on file, together with the affidavits, if any," which it believes
4                demonstrate the absence of a genuine issue of material fact.

5 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the

6 nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

7 judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

8 to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered,

9 after adequate time for discovery and upon motion, against a party who fails to make a showing

10 sufficient to establish the existence of an element essential to that party's case, and on which that

11 party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof

12 concerning an essential element of the nonmoving party's case necessarily renders all other facts

13 immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as

14 whatever is before the district court demonstrates that the standard for entry of summary

15 judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

16        If the moving party meets its initial responsibility, the burden then shifts to the

17 opposing party to establish that a genuine issue as to any material fact actually does exist. See

18 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to

19 establish the existence of this factual dispute, the opposing party may not rely upon the

20 allegations or denials of its pleadings but is required to tender evidence of specific facts in the

21 form of affidavits, and/or admissible discovery material, in support of its contention that the

22 dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party

23 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

24 of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

25 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

26 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

1  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

2  1436 (9th Cir. 1987).

3          In the endeavor to establish the existence of a factual dispute, the opposing party

4  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

5  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

6  versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

7  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

8  genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

9  committee's note on 1963 amendments).

10         In resolving the summary judgment motion, the court examines the pleadings,

11  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

12  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

13  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

14  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

15  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

16  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

17  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

18  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

19  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

20  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

21  'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

22         On November 18, 2004, the court advised plaintiff of the requirements for

23  opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v.

24  Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and

25  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

26  /////

1  II.  Facts

2       Defendants have submitted a Statement Of Undisputed Material Facts (DUF) in

3  support of their motion for summary judgment; plaintiff has stipulated to many of these facts.

4       A.  Undisputed And Stipulated Facts

5       In September 2000, plaintiff was provided with a "chrono" or medical

6  authorization for an egg crate or double mattress because of a compression fracture and scoliosis

7  of the spine.  DUF ¶ 5; Complaint (Compl.) at 4.[1]  Although the original chrono was a

8  "permanent" authorization for a special mattress, in 2004 HDSP modified its policy so that all

9  chronos were to be reviewed and updated on an annual basis.  DUF ¶¶ 7-8; Mot. For Summ. J.

10  (MSJ), Ex. 4 (Decl. of Roger Cox, M.D. (Cox Decl.) ¶¶ 5, 6, 11).  Dr. Dial prepared another

11  chrono for an eggcrate or double mattress, which was issued on March 24, 2004.  DUF ¶¶ 8-9;

12  Cox Decl. ¶ 10.

13       Defendant Cox was the scrivener for the Medical Chrono Committee that

14  reviewed the chrono for plaintiff's mattress.  DUF ¶¶ 11-12, 34-35; Cox Decl. ¶ 7.  The

15  committee reviewed plaintiff's medical records, including an x-ray from August 2000, which

16  showed an old compression fracture with associated degenerative changes and scoliosis.  DUF

17  ¶¶ 17-18; Cox Decl. ¶ 14.  A compression fracture is the loss of vertebral height caused by

18  compression on the spine.  Cox Decl. ¶ 15.  Once the fracture heals, the patient is no longer in

19  pain.  Cox Decl. ¶ 16.  The overall impression from plaintiff's medical records was mild

20  degenerative change.  DUF ¶ 19; Cox Decl. ¶ 14.

21       Defendant St. Andre is not qualified to determine which inmates are entitled to

22  special mattresses.  DUF ¶ 29; MSJ, Ex. 3 (Declaration of Robert St. Andre (St. Andre Decl.)

23

24

_____

25       [1]  The complaint form has printed numbers at the bottom of the pages, but these do not
correspond to the page numbers as counted consecutively.  The court refers to the consecutive,
26  hand-counted pages in its references.

¶ 8).  He had plaintiff's mattress removed after the chrono expired.  DUF ¶ 30.[2]  The mattress

was removed because of institutional policy.  DUF ¶ 31; St. Andre Decl. ¶ 9.

Plaintiff filed a grievance after his chrono was not renewed.  Defendant Sandham,

the Chief Medical Officer at High Desert State Prison, evaluated the grievance at the second

level.  DUF ¶ 32; MSJ, Ex. 5 (Declaration of Richard Sandham (Sandham Decl.) ¶ 6).  As part of

the appeal process, defendant Cox interviewed plaintiff.  DUF ¶ 37.  Based on this interview and

a review of medical records, defendant Cox determined that plaintiff did not need a special

mattress.  DUF ¶¶ 38-39; Cox Decl. ¶ 21.  Based on these records and the account of defendant

Cox's interview with plaintiff, defendant Sandham exercised his medical judgment and

determined plaintiff did not meet the criteria for an eggcrate or a double mattress.  DUF ¶ 33;

Sandham Decl. ¶¶ 10-11.

B.  Disputed Facts And Objections To The Affidavits

Defendants claim that according to the policies in place at the time, an inmate was

not entitled to an eggcrate mattress unless he had active skin breakdown or was at high risk of

skin breakdown; he was not entitled to a double mattress unless he had severe degenerative disc

disease or severe degenerative joint disease.  DUF ¶¶ 14-16; Cox Decl. ¶¶ 17-18.  Defendants

also claim plaintiff did not meet the criteria for either type of mattress.  DUF ¶ 20; Cox Decl.

¶ 19.  Plaintiff disputes these facts, on the grounds that he was unaware of the policies and that

the determinations were based on old medical records and x-rays.  Pl.'s Statement of Undisputed

and Disputed Facts (PUDF) ¶¶ 15-16, 19-20.

Defendants also claim that in 2005, plaintiff was seen by a specialist, who found

plaintiff to be suffering from slight back pain as a result of the mild degenerative changes in his

back.  The specialist found no need for further treatment, and recommended exercise.  DUF

¶¶ 22-23, 40-41.  Plaintiff counters that the "specialist" was the chief physician and surgeon at

[2]  Plaintiff avers he was not aware of the new policy or of the expiration of his chrono.

1   HDSP, not an orthopedic specialist, and disputes the diagnosis made during the visit.  PUDF

2   ¶¶ 21-23.

3          Defendants contend that defendant Cox saw plaintiff in June 2005 and did not

4   find any abnormal curvature of the spine or problems with his range of motion.  DUF ¶¶ 24-26.

5   Plaintiff told Cox that exercises helped but had not entirely relieved the symptoms of low back

6   pain.  DUF ¶ 25; Cox Decl. ¶ 24.  Defendant Cox determined that plaintiff did not require on-

7   going treatment or further tests.  DUF ¶ 41; Cox Decl. ¶¶ 24-25.  Plaintiff challenges these facts,

8   alleging that defendant Cox made no physical findings and never examined him; he also says his

9   alleged statement about the benefits of exercise "is not true and a perjured [sic] statement."

10   PUDF ¶¶ 25-26.

11          Liberally construed, see Haines v. Kerner, 404 U.S. 519, 520-21 (1972), plaintiff's

12   complaints about the facts constitute objections to defendant Cox's declaration.  Under Rule

13   56(e), "sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be

14   attached thereto or served therewith."  As the Ninth Circuit has explained, "if documentary

15   evidence is cited as a source of a factual contention, Rule 56(e) requires attachment," even if the

16   affidavit is also based on personal knowledge.  School Dist. No. 1J, Multnomah County, Or. v.

17   ACandS, Inc., 5 F.3d 1255, 1262 (9th Cir. 1993).  A court may refuse to consider an unsupported

18   affidavit.  Cermetek, Inc. v. Butler Avpak, Inc., 573 F.2d 1370, 1377 (9th Cir. 1978) ; see also

19   Smith v. Jenkins, 919 F.2d 90, 93 (8th Cir. 1990) (suggesting the problems with granting a

20   motion for summary judgment when the inmate's medical records have not been provided to the

21   court).

22          In this case, defendant Cox refers to the "policies and procedures in place" for the

23   issuance of special mattresses and plaintiff's medical chart; neither set of documents is attached

24   to his affidavit.  Cox Decl. ¶¶ 17-18, 22-23.  Accordingly, to the extent that defendants refer to

25   the special mattress policy or plaintiff's medical records beginning with his March 2005 contacts

26   with the specialist and with defendant Cox - evidence to which plaintiff has not stipulated - those

1   portions of defendant Cox's declaration will not be considered.

2           Defendants in turn object to plaintiff's opinions about defendant Cox's

3   determinations, arguing such opinions are beyond the knowledge of a lay witness. Fed. R. Evid.

4   701.  The court declines to strike or ignore plaintiff's claims.  <u>Scharf v. United States Attorney</u>

5   <u>General</u>, 597 F.2d 1240, 1243 (9th Cir. 1979) (in case involving pro se plaintiff, policy

6   articulated of courts being more lenient with pleadings of party opposing summary judgment,

7   even though they may raise matters culled from medical literature).

8   III.  <u>Medical Care And The Eighth Amendment</u>

9           In <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976), the Supreme Court held that

10  inadequate medical care did not constitute cruel and unusual punishment cognizable under

11  section 1983 unless the mistreatment rose to the level of "deliberate indifference to serious

12  medical needs.

13          In the Ninth Circuit, the test for deliberate indifference consists of
            two parts. First, the plaintiff must show a serious medical need by
14          demonstrating that failure to treat a prisoner's condition could
            result in further significant injury or the 'unnecessary and wanton
15          infliction of pain. " Second, the plaintiff must show the defendant's
            response to the need was deliberately indifferent.  This second
16          prong-defendant's response to the need was deliberately
            indifferent-is satisfied by showing (a) a purposeful act or failure to
17          respond to a prisoner's pain or possible medical need and (b) harm
            caused by the indifference. Indifference may appear when prison
18          officials deny, delay or intentionally interfere with medical
            treatment, or it may be shown by the way in which prison
19          physicians provide medical care.

20  <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations & quotations omitted); <u>see</u>

21  <u>also</u> <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1060 (9th Cir. 1992), <u>overruled in part on other</u>

22  <u>grounds</u>, <u>WMX Technologies, Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997).  Deliberate

23  indifference may occur when prison officials deny, delay, or intentionally interfere with medical

24  treatment, or may be demonstrated by the way in which prison officials provide medical care.  <u>Id.</u>

25  at 1059-60.  A refusal or failure to provide necessary medical equipment may show deliberate

26  indifference.  <u>See</u> <u>Johnson v. Hardin County Ky.</u>, 908 F.2d 1280, 1284 (6th Cir. 1990) (refusal

1   to provide crutches prescribed by inmate's doctor).

2          However, a showing of merely inadvertent or even negligent medical care is not

3   enough to establish a constitutional violation.  Estelle, 429 U.S. at 105-06; Frost v. Agnos, 152

4   F.3d 1124, 1130 (9th Cir.1998).  A difference of opinion about the proper course of treatment is

5   not deliberate indifference nor does a dispute between a prisoner and prison officials over the

6   necessity for or extent of medical treatment amount to a constitutional violation.  See, e.g.,

7   Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th

8   Cir. 1989).

9          A.  Defendant St. Andre

10         In his declaration, defendant St. Andre has averred that plaintiff's extra mattress

11  was removed because plaintiff did not have a valid medical chrono for it.  He also has averred

12  that he has no medical training that would enable him to determine if plaintiff was medically

13  entitled to an extra mattress.  Plaintiff has stipulated that defendant St. Andre has no medical

14  training and that when his extra mattress was seized, he did not have a valid chrono for it.  PUDF

15  ¶¶ 28-30.  Although plaintiff disputes the fact that his earlier chrono had expired and says he did

16  not know it had expired, he has not otherwise presented evidence that a chrono for an extra

17  mattress was valid in early 2004 when the mattress was seized.  Defendant St. Andre is entitled

18  to summary judgment.

19         B.  Defendants Sandham And Cox

20         Defendants Sandham and Cox argue that they were not deliberately indifferent in

21  refusing to approve the renewal of the mattress chrono because they relied on institutional policy

22  and reviewed plaintiff's medical records.  As noted above, the court cannot consider the policy

23  because it was not attached to either defendant Sandham or Cox's declarations.  Nevertheless,

24  these two defendants are entitled to summary judgment as explained below.

25         Both defendants aver that their actions were based on their review of the medical

26  records and their medical judgment that plaintiff's old compression fracture and scoliosis no

8

1   longer mandated a special mattress.  Sandham Decl. ¶ 11; Cox Decl. ¶¶ 22, 26.  Plaintiff argues

2   that these defendants should not have made that judgment based on old x-rays, but he has not

3   suggested what newer x-rays would have shown or explained what impact the deprivation of the

4   special mattress has had on his condition.  Because the two defendants reviewed plaintiff's

5   existing medical records and made a determination based on the documentation before them, this

6   court cannot say they failed to respond to plaintiff's medical need or that any actions or inactions

7   have caused plaintiff actual harm.  While there does appear to be a difference of opinion about

8   the need for such a mattress among the medical staff at HDSP, this is insufficient to defeat

9   summary judgment.  Sanchez, 891 F.2d at 242.

10          IT IS HEREBY RECOMMENDED that defendants' motion for summary

11  judgment be granted.

12          These findings and recommendations are submitted to the United States District

13  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

14  days after being served with these findings and recommendations, any party may file written

15  objections with the court and serve a copy on all parties.  Such a document should be captioned

16  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

17  shall be served and filed within ten days after service of the objections.  The parties are advised

18  that failure to file objections within the specified time may waive the right to appeal the District

19  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

20  DATED:  June 12, 2006.

21

22                                          _____
                                            UNITED STATES MAGISTRATE JUDGE
23

24

25

26  2
    wind1944.57